RICHARD STANLEY LANE v. EASTERN CAROLINA DRIVERS ASSOCIATION.

(Filed 20 January, 1961.)

1. **Appeal and Error § 1—**

   In granting a new trial for error in the charge, the evidence being sufficient to warrant the overruling of defendant's motion to nonsuit, the Supreme Court will refrain from discussing the evidence except as necessary to show the ground on which the new trial is awarded.

2. **Games and Exhibitions § 2—**

   The operator of an automobile race track is not an insurer of the safety of his invitees, but is charged with the duty of exercising for the safety of his patrons reasonable care commensurate with the known and reasonably foreseeable danger under the circumstances.

3. **Same: Negligence § 28—**

   Where a patron injured at an automobile race track seeks to recover on the dual grounds of negligence of the proprietor in permitting an improper and specially constructed vehicle to participate in the race and the negligence of the proprietor in failing to provide barriers reasonably sufficient to protect the patron, an instruction which submits only one of the theories of liability to the jury is incomplete.

4. **Negligence § 7—**

   In order for negligence to be actionable, it must be so related to the injury that, but for such negligence, the injury would not have occurred.

5. **Games and Exhibitions § 2: Negligence § 28— Charge held for error in failing to instruct jury on element of proximate cause.**

   This action was instituted by a patron of an automobile race track who was injured when struck by a racing vehicle, which veered from its direction of travel at an angle of 45 degrees and sped toward the spectator area, where cars were parked, at a speed of 120 miles per hour. There was conflict in the evidence as to what protective barriers, if any,

were customary or in general use on similar tracks, and the evidence disclosed that the barrier provided by the proprietor afforded virtually no protection. *Held:* It was for the jury to determine whether a barrier reasonably necessary to protect plaintiff from known or foreseeable dangers would have protected plaintiff from injury under the circumstances disclosed by the evidence, and a charge which refers to proximate cause only in stating the abstract principals of law applicable and which fails to mention proximate cause in the later application of the law to the evidence in the case, and in the last portion instructs the jury that if defendant had failed to provide proper barriers under the circumstances to answer the issue of negligence in the affirmative, must be held for prejudicial error.

APPEAL by defendant from *Burgwyn, Emergency Judge,* May Term, 1960, of PASQUOTANK.

Plaintiff's action is to recover damages for personal injuries he sustained on Sunday, February 22, 1959, while observing drag races or acceleration contests conducted by defendant, when a "dragster," operated by Earl Layden, left the racing strip and crashed, at a speed of approximately 120 miles per hour, into the spectator area.

The basic factual situation was as follows:

The races were conducted on a strip of concrete built (1941-1944) as a flight strip for airplanes. It was originally known as Maple Flight Strip, later as Maple Drag Strip. In 1955, and thereafter, defendant, in possession under lease of the land on which this strip is located, conducted such races or contests thereon, usually on the second and fourth Sunday of each month. Participants were charged an entry fee. Spectators (patrons) were charged an admission fee.

The concrete strip, running straight north-south, had an overall width of 162 feet. It consisted of fourteen parallel sections. The outer section on each side was nine feet wide. Each of the twelve inner sections was twelve feet wide. The overall length of this straight concrete strip was approximately three-quarters of a mile. However, a race, from start to finish, covered only the distance of 1320 feet, a quarter of a mile. The racers started from a standstill at the south end of the strip and traveled north towards and beyond the finish line.

The spectator area was on the west side of the concrete strip, to the left of the racers. There were no grandstands or bleachers. Spectators watched the races while standing or from parked cars.

Square posts, four inches in diameter, were set along and near the west edge of the concrete strip. These posts, three or four feet high, were ten to twelve feet apart. Two strands of wire, one about three

feet above the other, were fastened to the posts. This fence was the only barrier separating the spectator area from the concrete strip.

Only two cars participated in a race. They used the second and fourth sections (lanes) from the east edge of the concrete strip. The portion of the concrete strip west of the fourth section (lane), having a width in excess of one hundred feet, was used only for the return, at slow speed and in a lane marked by wooden blocks, of cars which had finished a race and were returning to their original positions.

Plaintiff, after paying the admission fee, drove into defendant's premises. He was accompanied by his wife and by Mr. and Mrs. Meads. A sign directed spectators to turn north. Parked cars of spectators were headed east, at right angles to the concrete strip, near the fence. Plaintiff, proceeding north behind these parked cars, turned right into the first open space and parked his car in the manner in which the cars of other spectators were parked. The space where plaintiff parked was north of the finish line. Cars of other spectators were parked north of the space where plaintiff parked.

Plaintiff had watched drag races at defendant's track on one prior occasion. On February 22, 1959, prior to his injury, plaintiff had watched several drag races, including three or four in which the Layden car had participated.

When the Layden car left the track and crashed into the spectator area, the race then in progress was between Layden and the (unidentified) driver of a "purple" car. Plaintiff was standing by the fence. His attention was directed towards the "purple" car, which was ahead as the two cars approached the finish line. The "purple" car was traveling in the second section (lane) from the east. The Layden car was traveling in the fourth section (lane) from the east. Approximately one hundred feet before it reached the finish line, Layden's car veered to its left, at an angle of approximately forty-five degrees, from its original straight course and headed directly towards and into the spectator area. In the resulting crash, Layden, the driver, was killed, Meads received fatal injuries, and plaintiff, his wife and Mrs. Meads were injured.

Plaintiff alleged his injuries were proximately caused by the negligence of defendant. He alleged defendant was negligent in these respects: (1) It failed to erect and maintain sufficient barriers or other protective devices to protect its patrons. (2) It failed to prepare or maintain a reasonably safe race track. (3) It invited its patrons to take a position near the race track without warning them they were in a position of danger. (4) It failed to provide a reasonably safe area or zone from which patrons might view the races. (5) It allowed

improperly constructed and unsafe automobiles to participate in the races. (6) It allowed the Layden car to race when it knew, or should have known, that it was built "with flimsy motor mounts, built with a steering mechanism of a type too slow to safely operate such a 'Spook' type car, and built with a bell housing shield on said vehicle not in accordance with the National Hot Rod Association's rules and regulations for safety."

Answering, defendant denied all plaintiff's allegations as to negligence. As further defenses, defendant pleaded: (1) The contributory negligence, including assumption of risk, on the part of plaintiff. (2) The negligence of Layden, constituted "either the sole proximate cause or, coupled with the contributory negligence of the plaintiff, constituted the proximate cause of the injuries to the plaintiff," and so insulated any negligence on the part of defendant. (3) Unavoidable accident.

The court submitted, and the jury answered, two issues: "1. Was the plaintiff injured by the negligence of the defendant, as alleged in the Complaint? ANSWER: Yes. 2. What amount, if any, is plaintiff entitled to recover of the defendant? ANSWER: $40,000."

Judgment for plaintiff, in accordance with the verdict, was entered. Defendant excepted and appealed; and upon appeal defendant sets forth 36 assignments of error based on 134 exceptions.

*Willard J. Moody, Killian Barwick and John H. Hall for plaintiff, appellee.*
*LeRoy, Goodwin & Wells for defendant, appellant.*

BOBBITT, J. Defendant's motion for judgment of nonsuit was properly overruled. Hence, we refrain from discussing the evidence presently before us except to the extent necessary to show the ground on which a new trial is awarded. *McGinnis v. Robinson*, 252 N.C. 574, 114 S.E. 2d 365; *Caudle v. R. R.*, 242 N.C. 466, 88 S.E. 2d 138.

Plaintiff, a patron, occupied the status of invitee. Defendant was not an insurer of plaintiff's safety. "The general rule is that the owner or operator of an automobile race track is charged with the duty of exercising reasonable care, under the circumstances present, for the safety of patrons, that is a care commensurate with the known or reasonably foreseeable danger." *Williams v. Strickland*, 251 N.C. 767, 112 S.E. 2d 533; 37 A.L.R. 2d 393.

"If the need is obvious or experience shows that an automobile race of the character and in the place proposed requires, in order to afford reasonable protection to spectators, the erection of fences or

similar barriers between the track and the places assigned to them, it becomes a part of the duty in exercising reasonable care for their safety to provide fences or barriers, the adequacy of which is dependent on the circumstances present, principally the custom of the business." 37 A.L.R. 2d 394; *Williams v. Strickland, supra.*

The Layden car was a specially constructed rear engine dragster. There was evidence from which diverse conclusions and inferences might be drawn as to whether the Layden car was so constructed that defendant, by the exercise of due care, could and should have reasonably foreseen that the driver would or might lose control thereof when operating at high speed, and as to whether defendant, upon proper inspection thereof, should have excluded the Layden car from participating in the fatal race. Under the court's instruction, as indicated below, the negligence of defendant was made to depend upon whether it failed to exercise due care to provide barriers reasonably sufficient to protect its patrons.

There was no evidence that any prior incident similar to that here considered had occurred on defendant's track. There was evidence that Layden had participated in such races on defendant's track since 1955.

Conflicting evidence was offered as to what protective barriers, if any, were customary or in use on similar drag race tracks. There was no evidence that facilities such as grandstands or bleachers were provided at any drag race track. From the evidence most favorable to plaintiff, diverse conclusions and inferences may be drawn as to whether any protective barrier referred to as in use on any similar track would have protected plaintiff from a car headed towards the spectator area at a speed of 120 miles per hour.

It appears plainly, from the evidence offered by both plaintiff and defendant, that the sole purpose of the fence was to keep spectators off the concrete strip, not to provide protection for spectators. If a racing car or wheel or other part thereof invaded the spectator area, the protection afforded by this fence was incidental and negligible.

As to negligence, the question was whether defendant breached its said legal duty. Here the inquiry was to determine whether defendant provided for its patrons such fence or other barrier as was reasonably necessary to protect them from known or foreseeable dangers. Since virtually no protection was provided, the second inquiry was of major importance, namely, whether, assuming defendant had provided for the protection of its patrons such fence or other barrier *as was reasonably necessary to protect them from known or foreseeable dangers,* would *such fences or barriers* have protected plaintiff from

a racing car headed into the spectator area at a speed of 120 miles per hour? If not, defendant's negligence in the respect indicated was not a proximate cause of plaintiff's injuries. The alleged negligence, to be actionable, must be so related to the injury that, but for such negligence, injury would not have occurred.

The importance of the element of proximate cause in this respect must be kept in mind in considering the assignment of error directed by defendant to this excerpt from the judge's charge:

> · "Now, gentlemen, if you are satisfied from the testimony and by the greater weight of the testimony that the defendant has been negligent, in failing to provide adequate, proper and reasonably safe premises for the spectators at their race and failed to exercise reasonable care for their safety, provide proper barriers for their protection, the adequacy of which was dependent upon the circumstances present, then and in that event, gentlemen, you would find the plaintiff to have carried the burden of proof of this case and answer that issue YES. If you are not so satisfied, you would answer it NO."

The foregoing is the court's final instruction to the jury relevant to the negligence issue. It will be observed that the element of proximate cause was inadvertently but entirely omitted.

Plaintiff cites the consolidated cases of *Sparks v. Holland* and *Pardue v. Holland,* 209 N.C. 705, 184 S.E. 552, and similar cases, as authority for the well established rule that the court's charge must be construed contextually as a whole and not disjointedly. In the cited case, the challenged instruction was as follows: "Now, gentlemen of the jury, if you find from the evidence and by its greater weight in this case that the plaintiff in each of these cases *was injured by* the negligence of the defendant, in each case you would answer the first issue 'Yes,' that is, in the *'Sparks* case' and also in the *'Pardue* case,' you would answer the issue 'Yes.'" (Our italics.) However, immediately preceding this statement, the court fully instructed the jury as to the significance of proximate cause as an element of actionable negligence. A similar factual situation was the basis of decision in *Gentry v. Utilities Co.,* 185 N.C. 285, 117 S.E. 9.

Here, consideration of the charge as a whole discloses that the court, before reviewing at length the respective contentions of the parties, defined actionable negligence in general terms. In doing so, the court rightly included in the definition of proximate cause the element that it must be a cause without which the result would not have occured. No attempt was made to apply this element of proxi-

mate cause to the factual situation in the manner indicated above. Under these circmstances, when the court, in the final instruction relating to the negligence issue, omitted entirely the element of proximate cause, we apprehend the jurors received the impression that, since *no* protective fence or barrier was provided, whether plaintiff would have been injured if defendant had provided a fence or barrier *reasonably necessary to protect plaintiff from known or foreseeable dangers* was of no importance in reaching their verdict.

Under the circumstances stated, the erroneous omission from the court's said final instruction of the element of proximate cause must be held sufficiently prejudicial to necessitate a new trial.

Mindful of the fact that the evidence at the next trial may be different in material respects, we refrain from discussing, on the basis of evidence presently before us, questions presented by defendant's other assignments of error.

New trial.